J-A06040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MONICA JUNE CHACLAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGELO NICHOLAS CHACLAS | : | |
| | : | |
| Appellant | : | No. 1635 EDA 2024 |

Appeal from the Order Entered May 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2016-04482-DI

| | | |
|---|---|---|
| MONICA JUNE CHACLAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGELO NICHOLAS CHACLAS | : | |
| | : | |
| Appellant | : | No. 1636 EDA 2024 |

Appeal from the Order Entered May 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2016-04482-DI

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 2, 2025**

In this consolidated appeal, Appellant, Angelo Nicholas Chaclas, ('Husband") appeals from the orders entered in the Court of Common Pleas of Chester County granting Appellee, Monica June Chaclas ("Wife") a constructive trust over disputed marital assets in the parties' equitable

_____

[*] Former Justice specially assigned to the Superior Court.

distribution matter and awarding her attorney fees incurred in litigating the parties' equitable distribution matters. After careful review, we affirm.

The trial court sets forth the relevant procedural history as it relates to issues pertaining to both the creation of a Constructive Trust to effect appropriate equitable distribution of marital assets and the imposition of attorney fees incurred by Wife during equitable distribution proceeding:

> Wife and Husband married on November 12, 1994, and are the parents of five (5) adult children. The parties separated in May 2015[FN1] and subsequently entered into a mediated Property Settlement Agreement dated July 1, 2015. The Agreement was amended in April of 2016. The parties' Final Decree in Divorce, incorporating but not merging the Agreement and the Amended Agreement, was entered by the Honorable Judge James P. MacElree, II, on October 3, 2016.
>
> ---
>
> Fn.1    The Honorable Katherine B.L. Platt determined the date of separation during the course of a hearing on the establishment of a constructive trust.
>
> ---
>
> On July 14, 2017, Wife filed a Petition for the Entry of a Constructive Trust and Distribution of Undisclosed Property, specifically assets awarded to Husband through his employment at Trinseo in February 2015.[FN2]    After a hearing, Judge Platt granted the relief requested and a constructive trust was established. []
>
> Wife filed a subsequent Petition to Modify the Constructive Trust on September 6, 2019, based on information she received at a support proceeding with respect to an undisclosed marital asset. On May 29, 2020, Husband filed a Petition to Modify the Constructive Trust seeking to sell the remaining 7,892 shares of Trinseo stock that had not been sold prior to the imposition of the Constructive Trust.

A hearing on these matters was held on June 8, 2020. Based on the hearing, two (2) Orders were entered. Judge Platt modified the Order on July 28, 2020, allowing Husband to distribute funds to himself and to secure any further liquidation of the assets is placed in the Trust.[FN3] On July 29, 2020, she amended the Constructive Trust to include the Pitney Bowes Deferred Executive Compensation Plan, also known as the Restoration Plan.[FN4]

---

FN3 This Order addresses Husband's May 29, 2020, Petition.

FN4 Wife learned of Husband's receipt of a gross payout of $336,400 in 2018 from the Pitney Bowes Deferred Executive Compensation Fund (an undisclosed asset earned during the marriage) at a support conference in 2019. Husband never disclosed the receipt of the funds to Wife, and she learned of it by chance.

---

On August 24, 2020, Wife filed yet another Motion to Modify Orders relating to the Constructive Trust due to Husband's failure to disclose a pension he accrued while working at Pitney Bowes during the marriage. Although in Wife's September 2019 Motion to Modify, Wife had asked the [trial court that] "any undisclosed executive compensation paid to [Husband]" be added to the list of assts under the Trust, the [trial court] did not include such language. By Order of January 14, 2021, Judge Platt amended the Constructive Trust Order to include the Pitney Bowes Defined Benefit Plan.

The parties filed for the appointment of a hearing officer in divorce on August 2, 2018, to equitably distribute the assets in the Constructive Trust. After numerous settlement conferences and delays due to pending Court of Common Pleas litigation, the matter proceeded to trial on April 20 and 21, 2022. The record was held open for the submission of a stipulation regarding the Pitney Bowes Defined Benefit Plan and for the submission of updated legal fees. Neither document was ever submitted. Parties submitted briefs to Hearing Officer Borradaile. The Hearing Officer filed her Report and Recommendation on December 29, 2022. Husband filed timely exceptions. A briefing schedule on exceptions was agreed to and oral argument was held on October 12, 2023.

The parties were both 58 years old at the time of the equitable distribution hearing. Husband is employed by Trinseo as Senior Vice President, Chief Legal Officer, and Corporate Secretary. The Hearing Officer found Husband's earned income averaged $1,320,026 from 2015-2021, earning a minimum of $591,814 and a maximum of $2,379,015.[FN5] See Report and Recommendation, 12/29/2022, pp 5-7. The Hearing Officer determined Wife's earning capacity to be $75,000 per year.

---

FN5 This is exclusive of the funds Husband received from Pitney Bowes.

---

The Hearing Officer did an extensive analysis of what each of the parties received from the initial distribution of the disclosed marital estate,[] [which did not include the assets in the Constructive Trust], as well as what each party has remaining and/or in a separate estate. After an analysis of the eleven (11) divorce factors[] outlined in 23 Pa.C.S.A. 3501, she recommended the division of the assets in the Constructive Trust 60.5% to Wife and 39.5% to Husband.

The assets being held in the Constructive Trust are a combination of the first and second February 2014 long term incentive (LTI) stock grants--$503,680; the third 2015 LTI stock grant--$222,634; long-term incentive payments, 2013--$78,200 and 2014-$95,000; 2015 retention payment--$42,250; dividend payments--$24,092; and the Pitney Bowes Non-Qualified Restoration Plan--$201,000, all values are net of taxes, plus an additional 6,036 shares of Trinseo stock.

The non-retirement assets total $1,166,856[] and the retirement assets total $402,360. Due to the nature of the assets, the Hearing Officer divided the assets in the blocks, *i.e.*, she divided each individual tranche of stock options and payments.

Husband received 60% of all the 2015 stock grants, of the 6,036 shares of Trinseo stock, of the dividends generated from the ownership of those shares of stock, and 40% of the 2015 retention and the 2013 LTI incentive payment.

Wife received 60% of the 2013 LTI payment and of the 2015 retention payment and 40% of all the 2015 stock grants, of the 6,036 shares of Trinseo stock, of the dividends generated from the ownership of those shares of stock.

The parties shared equally the 2014 long-term incentive payment.

The Hearing Officer awarded Wife the entirety of the Pitney Bowes Non-Qualified Restoration Plan, $201,000, and the entire marital portion of the Pitney Bowes Defined Benefit Plan, estimated to be $402,360 gross, after applying a coverture fraction.

The end result is that Husband received $550,149 from the Constructive Trust, 3,622 shares of Trinseo stock, and Wife received $616,707 from the Constructive Trust, 2,417 shares of Trinseo stock and the entirety of the Pitney Bowes Defined Benefit Plan, valued at approximately $402,360.

Trial Court Opinion, 5/17/24, at 1-4.

From Husband's Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, he presents in his appellate brief the following issues for this Court's consideration:

1. Did the Trial Court err as a matter of law and abuse its discretion by granting a Constructive Trust for the Long-Term Incentives ("Long-Term Incentives" or "LTI") by finding that Husband fraudulently failed to disclose the LTI where the LTI itself was referenced in a mediated Property Settlement Agreement and in repeated pre-divorce decree communications between the parties?

2. Did the Trial Court err as a matter of law and abuse its discretion by denying Husband's attempts to obtain discovery related to the Mediation that gave rise to the Property Settlement Agreement thereby disregarding the "fraud exception" to the mediation privilege and where the Trial Court relied upon what it believed the Mediator "would have done"?

3. Did the Trial Court err as a matter of law and abuse its discretion by granting excessive attorney's fees because (1)

they were not supported by the record; (2) the record was still open; and (3) some attorney's fees were associated with Wife's opposition to preserve a marital asset?

4. Did the Honorable Trial Court err as a matter of law and abuse its discretion by failing to apply the coverture fraction, or otherwise take into consideration that the LTI was earned almost entirely post-separation?

5. Did the Trial Court err as a matter of law and abuse its discretion by granting a Constructive Trust for the Pitney Bowes Defined Pension Plan?

6. Did the Trial Court err as a matter of law and abuse its discretion by awarding appellate attorney's fees in the amount of $6,000.00 as: (1) Husband prevailed on the issue of attorney's fees in Husband's initial appeal; and (2) [] Wife failed to file an application for attorney's fees with the appellate court pursuant to Pa.R.A.P. 2751 and Pa.R.A.P. 2744[?]

7. Did the Trial Court err as a matter of law and abuse its discretion by awarding attorney's fees in the amount of $16,805.00 as said sum is unreasonable[?]

Brief of Appellant, at 9-10.

Our standard of review of an order enforcing a property settlement agreement is as follows:

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate

- 6 -

court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Rosiecki v. Rosiecki*, 231 A.3d 928, 932-33 (Pa. Super. 2020), *appeal denied*, 240 A.3d 1217 (Pa. 2020) (citations omitted). "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." *Paroly v. Paroly*, 876 A.2d 1061, 1063 (Pa. Super. 2005) (citation omitted). The purpose of equitable distribution in divorce proceedings is to "effectuate economic justice" between the parties and allow a fair and just distribution of their property rights. 23 Pa.C.S. § 3102(a)(6); *Fogle v. Fogle*, 311 A.3d 604 (Pa. Super. 2023).

In Husband's first issue,[1] he asserts the trial court order of May 7, 2018, erroneously granted Wife a Constructive Trust to access $182,000 in long-term incentive grant ("LTI") assets awarded to him in 2015 after the court found he fraudulently failed to disclose the LTIs to Wife during negotiations and mediation leading to the eventual 2016 Amended PSA. According to Husband, Wife bore a burden to rebut with clear and convincing evidence the presumption, expressed in Paragraph 30 of the Amended PSA, that the parties' agreement was the product of full and fair disclosure given during negotiations, and she cannot carry this burden when the very terms of the

---

[1] The Brief for Appellant addresses Issue 1 in Arguments A through D, on pp. 47-52.

Amended PSA acknowledge that his prior and ongoing compensation package consisted in part of LTIs. *See* Brief for Appellant, at 9.

> The trial court has expansive equitable powers, including the ability to impose a constructive trust. *See Kimball v. Barr Township*, 378 A.2d 366, 368 (Pa. Super. 1977). Such relief may be granted where "a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id*.
>
> "A constructive trust, it has often been said, is not really a trust at all but rather an equitable remedy" which is "flexible and adaptable." *Id*. Even where a party has claimed an equitable right to a sum of money, as opposed to title to tangible or real property, a "classic case for the imposition of a constructive trust" may arise if it is needed to avoid an injustice. *Id*. (imposing constructive trust upon Appellant in the amount of $5,500 to ensure Appellee's compensation for unpaid earnings).

*Linn v. Perrotti*, 308 A.3d 885, 889 (Pa. Super. 2024).

The first of Husband's four arguments contesting the matter of fraudulent nondisclosure and the need for a Constructive Trust maintains that the 2016 Amended PSA Paragraph 11 confirms he disclosed the LTI portion of his compensation package in conformance with Paragraph 30's presumption that the parties have engaged in full and fair disclosure. He directs us to Paragraph 11, which provides,

> In addition, so long as Wife is not cohabiting or remarried and so long as Husband is employed full time at the compensation comparable to his 2015 compensation, Husband agrees to pay to Wife ten percent (10%) of his gross annual cash bonus (this does include discretionary or retention bonus or awards **or long term incentive awards** or compensation) for two additional years in April 2020 and in April 2021.

Amended PSA, Paragraph 11, "Alimony/Alimony Pendent Lite and/or Spousal Support" (emphasis added in Brief for Husband, at 50). On the significance of Paragraph 11 to the present issue, Husband posits, "the very asset that Wife argues was not disclosed[] is specifically referenced in the PSA itself." Brief for Husband, at 50.

Paragraph 11 does not say what Husband claims it says. Contrary to Husband's reading, Paragraph 11 acknowledges neither Husband's prior compensation in specific LTI assets nor any disclosure of such to Wife. Instead, the paragraph merely identifies the possibility that Husband may be awarded annual bonuses and provides generally that, if he receives such awards, they may take the form of any one or more of the various assets listed disjunctively, including LTIs. Thus, any bonus contemplated under this paragraph may either include LTIs "or" not include them. Therefore, we find no merit to Appellant's first issue.

In Husband's remaining three arguments relating to full and fair disclosure, he asserts in conclusory fashion that Wife clearly was aware of the 2015 award of LTI before the parties amended their PSA because she was copied on an email where Husband discussed the LTI extensively and was previously apprised of compensation package offers, most of which included LTI, in emails leading up to his employment with Trinseo. *See* Brief of Husband, at 51-52.

For this appeal, The Honorable Alita A. Rovito submits a responsive Pa.R.A.P. 1925(a) opinion explaining how her consideration of the arguments

raised on the overarching issue of whether Husband made disclosure and of the pertinent underlying record led her to conclude that Husband's challenge to the court order granting a Constructive Trust for LTIs was meritless.

Significantly, Judge Rovito points to the 2018 findings of fact and conclusions of law incorporated in the May 7, 2018, Opinion authored by the then-presiding judge, The Honorable Katherine B.L. Platt, who conducted two hearings on the issue of Husband's alleged nondisclosure of LTIs. Sitting as finder of fact, Judge Platt deemed Husband not credible in his testimony that the LTIs were awarded only after the parties separated and that Wife had received full and fair disclosure of the LTIs during PSA negotiations.

In Judge Platt's thorough review of testimony and documentary evidence admitted at the hearing, she found that Wife met her burden to present clear and convincing evidence that disproved the presumption of "Full and Fair Disclosure" between the parties set forth in Paragraph 30 of the 2016 Amended PSA. Central to Judge Platt's decision that the 2015 LTIs were marital property that Husband had not disclosed to Wife during PSA negotiations was Husband's omission of any reference to the LTIs from both the May 2015 separation outline and the June 2015 revised separation outline that he prepared during the parties' 2015 mediation sessions with mediator Catherine Voit, Esquire. Judge Platt observes:

> Wife testifies that Husband prepared a separation outline which she emailed to Ms. Voit (Exhibit 2). The parties met with Ms. Voit and they exchanged drafts of the Mediation Agreement with her (P-3). They sent Ms. Voit a separation outline in May and a revised

separation outline in June. Husband stated that he and Wife prepared the separation outline (P-2) and he typed it.

Wife testified that Husband drafted the schedules of assets submitted to Ms. Voit. She states that they (Husband and Wife) may have talked about one or two parts of it. The (final) Agreement went through multiple drafts. Wife was represented by [legal counsel] during the negotiations. She said [counsel] told her to have the Agreement reviewed by an accountant. Husband was self-represented throughout.

There are no securities listed in the Agreement (P-4). The Agreement does not list the shares of Trinseo stock and stock equivalents (restricted stock units) that Husband was awarded in February of 2015. It also fails to list a retention bonus Husband received in two installments; the summer of 2013, and December of 2014.[] Husband stated that at the time he prepared the separation outline for Ms. Voit (P-2), he did not list the retention payments. Husband testified that the parties had extensive discussions in mediation about his compensation package.

Exhibit P-13 is a letter to Husband dated March 4, 2015, from the chairman of Trinseo, stating that Husband will be paid $103,962 for attaining his 2014 target. He did not include that asset on the separation outline (P-2) to Ms. Voit. Husband stated that Ms. Voit, "needed a set of instructions to prepare the Agreement." Husband testified that he went over with Ms. Voit multiple times his cash, his cash bonus annually and his LTI (per his pay stub).

In his October 30, 2017, deposition, Husband stated that the 2012 LTI plan (which paid out 3 years later) "did not concern" Ms. Voit in her job in preparing the Agreement (Deposition, pages 36, 64). At the March 19, 2018, hearing, Husband testified that after May 28, 2015, and before the Agreement was signed, he put the letter (Exhibit P-10) on the nightstand in the bedroom for Wife to read. He stated that on the date he signed the Agreement (10/22/15), he was not eligible to receive the stock bonus because the stock was not vested.

. . .

When Wife decided to move back to Pennsylvania in 2016, the parties negotiated an Amended Agreement. Wife was again

represented by [same counsel]. Husband continued to represent himself. Husband claimed Wife never asked about the LTIs for the Amended Agreement, nor did [Wife's counsel]. Husband produced emails he sent to the mortgage broker in April of 2016 wherein he referenced the LTIs and retention payments. Wife is copied on the emails. This was a year after the parties conducted mediation with Ms. Voit, and seven months after the Agreement was signed.

Husband claims Wife was always aware of their finances; she controlled the parties' joint checking account, wrote the checks and paid all of the household bills. Wife claims she knew that Husband's Pitney Bowes stock failed to deliver a payout. She was unaware that Trinseo awarded Husband shares of restricted stock and options on February 27, 2015. She first learned that Husband had shares of Trinseo stock in 2017 when she saw a document on Husband's desk listing the shares of Trinseo stock he had recently sold.

Wife contends that during mediation and when she signed the Agreement, she was unaware of the Trinseo stock, stock equivalents (restricted stock units) or any LTIs that Husband received in February 27, 2015. The Agreement does not list the stocks awarded on February 27, 2015. Husband asserts that all of the marital assets were disclosed to Wife during mediation. He claimed that he discussed his stock with Ms. Voit.

The drafts of the separation outline [Husband] prepared for Ms. Voit are silent as to the stock, stock equivalents, and LTIs awarded on February 27, 2015 (P-2). Husband was certainly aware that he was awarded the stock because on March 3, 2015, he notified the Securities and Exchange Commission of the acquisition. (P-9).

I have no doubt that if the stock and stock units were disclosed to Mediator Voit, she would have included/identified the stock, stock options and restricted stock units in the Agreement. The fact that the Agreement fails to mention those assets (other than the brief reference of discretionary or retention bonus or awards or long term incentive awards or compensation in the alimony paragraph [See Paragraph 11, Amended PSA, *supra*] convinces me that Husband never disclosed those specific assets to Ms. Voit. If they had been disclosed to Wife, she or her counsel would have requested that they be referenced in some form in the Agreement.

Order, 5/7/2018, at 9-10, 12-13.

Our review reveals no abuse of discretion in Judge Platt's findings of fact and conclusions of law based on the evidence presented at the two hearings over which she presided. Accordingly, we find Husband's second and third issues meritless.

In Husband's second issue,[2] he contends the trial court erred as a matter of law and abused its discretion by denying his request to obtain discovery of both Mediator Voit's notes and her recollection of communications with the parties for the purpose of determining whether Wife revealed having knowledge of Husband's 2015 LTI award from any source, such as an email containing information of the award during the time of mediation. If such a revelation during discussions occurred, he continues, it would undermine the court's finding that Husband fraudulently influenced the PSA negotiations by misleading Wife to believe LTIs were not among his marital assets.

Husband acknowledges that the Pennsylvania Code provides for the confidentiality of mediation communications and documents pursuant to 42 Pa.C.S. 5949(a),[3] but he invokes the exception to confidentiality for claims of

_____

[2] The Brief for Appellant addresses Issue 2 in Argument E, F, and G, on pp. 53-59.

[3] Section 5949, Confidential mediation communications and documents, provides, in relevant part:

**(a)** **General rule.--**Except as provided in subsection (b), all
        mediation communications and mediation documents are

*(Footnote Continued Next Page)*

- 13 -

fraud in Section 5949(b)(3), which states the privilege and limitation set forth under subsection (a) does not apply to a fraudulent communication during mediation that is relevant evidence in an action to enforce or set aside a mediated agreement reached as a result of that fraudulent communication." 42 Pa.C.S. 5949(b)(3).

Husband is the author of the only mediation communication deemed fraudulent in this matter, namely, his representation of marital assets that excluded LTIs recently awarded to him in 2015, and it would be absurd to suggest he requires disclosure of his own communication. We find, therefore, that his request fails to meet the requirements of the narrowly tailored subsection (b) exception, whose plain purpose is to permit disclosure of a fraudulent mediation communication or document that is relevant to either

---

privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process. Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding.

**(b) Exceptions.—**

. . .

(3) The privilege and limitation set forth under subsection (a) does not apply to a fraudulent communication during mediation that is relevant evidence in an action to enforce or set aside a mediated agreement reached as a result of that fraudulent communication.

42 Pa.C.S.A. § 5949.

enforcing or setting aside a mediated agreement reached because of that fraudulent communication.

Here, Husband has not identified a fraudulent communication made by Wife, let alone one he relied upon to reach a mediated agreement, as Section 5949 requires for disclosure. Instead, he seeks disclosure of the entire mediation record to search for some evidence that Wife knew about his 2015 LTI compensation, despite his actions, and thus could not have justifiably relied on his misrepresentation.

As discussed at length above, however, Judge Platt reasonably rejected all the arguments Husband offered to discredit Wife's testimony denying knowledge of the award of LTI assets during mediation and PSA negotiations, and her judicial finding of fact that Wife demonstrated justifiable reliance on Husband's fraudulent nondisclosure at the time the parties entered into the Amended PSA is supported by the record. Neither the emails cited by Husband nor PSA Paragraph 11's generic reference to Husband's potential bonuses that may consist of, *inter alia*, LTIs, gave Wife notice of Husband's 2015 LTI award.

Confronted with this evidence that Husband withheld the LTI award from the written list of assets he submitted for both mediation and the 2016 Amended PSA negotiations, Judge Platt reasonably inferred that, had Husband disclosed the LTI award verbally in mediation communications and meetings, Mediator Voit certainly would have factored the award in her recommendations, and Wife would have acted in her best interest by advising her counsel of the same for purposes of negotiating the eventual 2016

Amended PSA. Because neither Mediator Voit nor Wife acted in these expected ways, Judge Platt rejected Husband's claim that he revealed his LTI award during mediation. In reaching this conclusion, Judge Platt acted within the scope of her sound discretion as finder of fact, and we discern no reversible error with either her reasoning or Judge Rovito's subsequent incorporation of such in its Opinion and Order of July 11, 2024.

In Husband's third issue,[4] he presents multiple claims that the trial court erred as a matter of law and abused its discretion by granting what he calls excessive attorney fees incurred in both litigation and appeal of equitable distribution. Specifically, he declares Wife's asserted attorney fees are unreasonable, and he invokes jurisprudence recognizing a trial court's authority to consider the reasonableness of claimed attorney fees in matters governed by party agreements mandating that a breaching party must pay the attorney fees incurred by the non-breaching party in enforcing the agreement. *See McMullen v. Kutz*, 925 A.2d 832, 835 (Pa. Super. 2007), *aff'd*, 985 A.2d 769, 775-77 (Pa. 2009) (holding even where contract provides for breaching party to pay nonbreaching party's attorney fees, trial court must consider whether claimed fees are reasonable, and may reduce fees if appropriate).

This Court has explained:

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts

_____

[4] Brief of Appellant addresses Issue 3 in Argument H, pp. 59-66.

and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question. A larger fee than usual is likewise frequently awarded when an attorney "creates" a fund.

**By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower [c]ourt and will be changed by an appellate Court only when there is a clear abuse of discretion.**

*In re LaRocca's Trust Estate*, 431 Pa. 542, 246 A.2d 337, 339 (1968) (citations and footnote omitted) (emphasis added).

This Court has further explained:

We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound. **It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved.**

- 17 -

> ***Gilmore by Gilmore v. Dondero***, [582 A.2d 1106, 1108-09 (Pa. Super.] 1990) (citations omitted) (emphasis added).

***Amres Corp. v. Ayzenberg***, (non-precedential decision) No. 2640 EDA 2023, 2024 WL 5135723, at *9 (Pa. Super. filed Dec. 17, 2024).[5]

As part of his reasonableness argument, Husband first maintains that by requiring him to pay in the present equitable distribution matter Wife's attorney fees incurred in a separate cohabitation matter, the trial court effectively ordered him to pay these legal fees twice. Such "double payment," he submits, contravenes jurisprudence requiring that attorney fees be reasonable or, in his words, "fair and just." Brief of Husband, at 60.[6] Also breaching the requirement that counsel fees be reasonable, he continues, was the court's award of fees incurred in opposing Husband's motion to exercise stock options, even though the court granted Husband's motion and the exercise successfully funded the constructive trust. So, too, Husband concludes, was it unreasonable to enter the order awarding counsel fees when the record was still open.

The trial court rejects Husband's argument that the Superior Court's remand order faulting the Hearing Officer's failure to consider the

_____

[5] We note that, while this Court's non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, they are, as the term "non-precedential" suggests, not binding on lower courts except as law of the case. ***See*** 210 Pa.Code § 65.37(A).

[6] This issue largely overlaps with Husband's final issue addressing the same award of attorney fees.

reasonableness of Wife's claimed attorney fees and directing the trial court to conduct the overlooked reasonableness inquiry implied our skepticism of the factual bases for the claimed attorney fees. Rather, the trial court aptly observes, the remand order concerned itself solely with rectifying the trial court's analytical error of failing to perform a mandatory review of whether Wife's claimed amount of attorney fees was reasonable. We agree with the trial court's assessment on this point.

Guided by this Court's decision remanding for further consideration, the trial court revisited the issue of attorney fees and conducted a thorough reasonableness inquiry addressing all related attorney fee arguments raised by Husband. We find it helpful to reproduce the trial court's Order and Opinion of May 17, 2024[7], in this regard:

> **[Husband] argues the Hearing Officer failed to appropriately determine the fees strictly associated with the Constructive Trust and equitable distribution matters and she did not properly consider the evidence presented in trial and reduce the fees accordingly.** The [trial court] is obligated to carefully consider the legal fees presented and award only those that are both reasonable and related to the case being tried. The Hearing Officer awarded $120,000 in fees out of $134,896 requested and stated, based on the length of the litigation and Wife's efforts to pursue her rights, an award of fees is reasonable.
>
> As to the amount awarded, the [trial court] is obligated to address the reasonableness of the fees presented by Wife. In addressing the reasonableness of fees, the Pennsylvania Supreme Court in [**In re LaRocca's Trust Estate**, **supra**] outlined the factors that

---

[7] The trial court's subsequent Pa.R.A.P. 1925(a) Opinion incorporates and attaches, *inter alia*, its May 17, 2024, Order and Opinion.

a court must use to evaluate the reasonableness of attorney's fees and costs:

> The amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the service rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* [], 246 A.2d at 339 (citations omitted).

The Hearing Officer did not address the specific requirements outlined above nor did she include any discussion of what factored into her decision to award the amount given; however, the [trial court] agrees with her overall assessment with respect to Husband's actions and the appropriateness of an award of fees.

Wife presented Exhibit P-10, a 105-page document outlining the fees associated with all the litigation the parties were involved in from July 14, 2017, when Wife filed the initial request to establish a Constructive Trust until immediately prior to the equitable distribution hearing. There is no question the parties engaged in extensive litigation not only surrounding the Constructive Trust and subsequent equitable distribution matters, but also for support, custody, and enforcement of the Agreements. **It is only the fees relative to the establishment and maintenance of the Constructive Trust and the litigation of the equitable distribution matters that may be awarded in this matter.**

As to a reasonableness analysis, it is clear there was a significant amount of work associated with the prosecution of the Constructive Trust and equitable distribution matters. The character of the services rendered is litigation. There is no question the litigation was important to both parties as well as the amount of money of the estate being $1,901,196. The Honorable Katherine B.L. Platt stated in her Decision in establishing a constructive trust, that she found by clear and convincing evidence, Husband deliberately misled Wife and knowingly

concealed assets from her during their divorce and property mediation. As this [trial court] has said in prior Opinions in this matter, this entire litigation and fees associated therewith is the result of the actions of Husband. Wife's counsel is well known in the family law community both locally and statewide and he obtained a positive resolution for his client. Based on the award in the equitable distribution matter, Wife is able to pay the fees. As the [trial court] has noted in prior matters, the [Pennsylvania] Supreme Court feels very strongly about the factor, "the amount of money or value of the property in question" as they repeat it in their reasonableness analysis. The value of the Constructive Trust is significant as stated above and it was a legitimate and reasonable course of action on Wife's part to prosecute this matter. There has been no abuse of discretion in the award of legal fees based on the reasonableness analysis outlined above.

Exhibit P-10 shows the total of Wife's legal fees in all matters billed from July 14, 2017 [to] February 26, 2022, to be $134,896.44. The Hearing Officer awarded $120,000 in fees.

Husband's brief claims Wife was not entitled to fees as she did not prevail on all matters and took losing positions on major points that were heavily contested. This is not accurate. Wife successfully filed for and received a constructive trust to hold assets Husband did not disclose during the divorce mediation. She additionally filed as each asset was discovered and the asset was included in the Constructive Trust.

Further, there is no requirement that a litigant win "all" matters in order to prevail on a request for fees. Wife was successful on many issues. Husband argues Wife was not successful having the date of separation of her choosing selected; Husband was also not successful in having the date of separation he chose selected so neither party "won" on that issue.

**Husband next argues Wife was unsuccessful with respect to the liquidation of stock options and had she been successful, the asset would have been lost.** Husband states in his brief, "[T]he Hearing Officer awarded Plaintiff [Wife] fees for opposing the preservation of $160,000 which is clearly in error." **There would have been no need to address the liquidation of the options as Husband requested had they been disclosed during the original negotiations.**

- 21 -

Husband next claims Wife should not be rewarded for engaging in excessive discovery. Due to the lack of trust between the parties and the information Husband provided, Wife and her counsel were exercising appropriate due diligence in their discovery efforts.

Husband claims the Hearing Officer erred when she entered her Report and Recommendation when the record was still open. The Hearing Officer left the record open to receive updated legal fees, which were never received. Although the Hearing Officer never "closed" the record on the record, there is no legal support [to establish] an error nor has Husband demonstrated any harm or prejudice due to this action.

In order to assess the final part of Husband['s] argument with respect to fees, [namely, that] the amount awarded was excessive based on Wife's own testimony and the actual document, the [trial court] did an extensive and careful review of each entry on Exhibit P-10 and Wife's testimony as to her fees: it is found the Hearing Officer did not conduct a reasonableness analysis and, therefore, abused her discretion with respect to the amount of the legal fee awarded. The [trial court] agrees with Husband that he successfully challenged many of the entries as being not related to the Constructive Trust and the equitable distribution matter. There were a number of hybrid entries that, where appropriate, the Court divided between the appropriate areas of litigation or rejected completely.

Based on the [trial court's] comprehensive review of each entry on P-10, including attorney, legal and administrative staff, and considering Wife's testimony, Wife is awarded $115,319 in legal fees.

Trial Court Opinion, 5/17/24, at 12-15 (emphasis added).

Significantly, the trial court's May 17, 2024, opinion acknowledges at the outset that "it is only the fees relative to the establishment and maintenance of the Constructive Trust and the litigation of the equitable distribution matters that may be awarded in this matter." Our review verifies that in accordance with the trial court's opening acknowledgment it properly

has confined its reasonableness inquiry in arriving at a downward revision of the attorney fee award for Wife.

While the trial court granted Husband's exception to the original amount of attorney fees awarded by the Hearing Officer, it is beyond question that it did not accept Husband's alternative calculations. For example, to Husband's complaint about Wife's "excessive discovery" as a basis for reducing her claimed fees, the trial court responded that the protracted discovery period was a function of his demonstrated reticence to provide full and fair disclosure. To the trial court, it was Husband who caused repeated concerns about asset preservation that largely were responsible for the additional attorney fees incurred by Wife. We perceive no reason to find error with either the trial court's review of the record or its opinion reached on this issue.

Relatedly, Husband's sixth and seventh issues[8] challenge additional attorney fees awarded to Wife, specifically, the $6,000.00 award for appellate attorney fees for her responsive brief to Husband's appeal from the order denying relief on his cohabitation/breach of contract claim,[9] and the $16,805.00 in non-appeal attorney fees spent on advancing Wife's petition to

_____

[8] Brief for Appellant addresses Issues 6 and 7 at Arguments K and L on pp. 77-93

[9] Wife sought reimbursement of $10,000.00 in appellate attorney fees comprising $6,000.00 for preparation of her appellate brief opposing Husband's appeal of the order denying his breach of contract/cohabitation claim and $4,000.00 on her motion to quash. The trial court had denied reimbursement of attorney fees spent on her non-meritorious motion but awarded her the fees spent on her successful opposition to Husband's substantive claims.

enforce the property settlement agreement. Initially, we note the trial court disagreed with Husband's proposed methodology for reviewing Wife's request for appellate attorney fees.  Specifically, Husband posited that Wife's request for attorney fees was governed by Pa.R.A.P. 2744, "Further Costs. Counsel Fees. Damages for Delay" and Rule 2751, "Applications for Further Costs and Damages,"[10] which apply to fees incurred on a claim contesting an alleged vexatious or dilatory appeal.

_____

[10] Rule 2744 provides:

> In addition to other costs allowable by general rule of Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> (1)   A reasonable counsel fee and
>
> (2)   Damages for delay at the rate of 6% per annum in addition to legal interest, if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.  The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

Rule 2751 provides:

> An application for further costs and damages must be made before the record is remanded, unless the appellate court, for cause shown, shall otherwise direct.  Such an application must set forth specifically the reasons why it should be granted and shall be accompanied by the opinion of the court and the briefs used therein.  An application for further costs and damages shall contain the certificate of compliance required by Pa.R.A.P. 127.

Pa.R.A.P. 2751.

Instead, the trial court observed that Wife's appellate attorney fees claim is based on and governed by the parties' 2016 Amended Property Settlement Agreement and the enforcement provision within that contract. Specifically, the provision states:

> If either party breaches any provision of this agreement, the other party shall have the right, at his or her election, to sue for damages for such breach and the breaching party shall be responsible for payment of legal fees and costs incurred by the other in enforcing his or her rights under this Agreement, or seek such other remedies or relief as may be available to him or her.

2016 PSA at p. 23, paragraph 31(a).

In conducting the post-remand reasonableness inquiry into Wife's claimed appellate attorney fees, the trial court acknowledged that under the "American Rule," applicable in Pennsylvania, each litigant must pay its own legal fees and may not recover such fees from an adverse party "unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Slomowitz v. Kessler*, 268 A.3d 1081, 1107 (Pa. Super. 2021) (citing *Trizechahn Gateway LLC v. Titus*, 976 A. 2d 474 (Pa. 2009)). Consistent with this jurisprudence, the trial court appropriately turned to the parties' 2016 Agreement to guide it in its inquiry.

In addition to the trial court's earlier reference to *In re LaRocca's Trust Estate* and its discussion of factors a court shall consider in evaluating the reasonableness of attorney's fees and costs, the trial court also acknowledged that the Agreement provides the non-breaching party the right

to receive reimbursement of attorney fees incurred to obtain enforcement of the Agreement against a breaching party.

The trial court reasoned:

> In the course of the [trial] court's analysis of reasonable fees, it considered the Ten Thousand Dollars ($10,000.00) expended by Appellee [Wife] on the appeal pursuant to the Agreement. . . . The Agreement entered by the parties identified certain obligations and conferred certain rights of each of the parties, including the right to legal fees for enforcement, which [the trial court] analogizes to the statutory right to fees under the UTPCPL. As [Appellant Husband's] underlying appeal in this matter challenged the trial court's decision to enforce the Agreement, Appellee [Wife] was required to expend additional fees related to the enforcement of the Agreement. As the Agreement does not qualify the fees or the court in which the fees are expended to enforce one's rights under the Agreement, the award of appellate legal fees is appropriate and authorized by the parties' Agreement.

Pa.R.A.P 1925(a) opinion, 8/12/2024, pp. 6-7.

We find no cause to disagree that the award of $6,000.00 of the $10,000.00 in requested attorney fees, incurred by Wife to oppose Husband's first appeal from the trial court order denying his cohabitation-based breach of contract claim seeking termination of the Agreement, was reasonable. For the specific reasons expressed by the trial court after conducting a hearing on the matter, and where Wife's successful counseled defense against Husband's substantive appellate issue ensured the continued enforcement of the Agreement, we reject Husband's claim that Wife was the non-prevailing appellate party and he the prevailing appellate party simply because this Court concluded its decision by remanding and directing the trial court to conduct a

mandatory inquiry into the reasonableness of the amount of Wife's claimed attorney fees incurred to enforce the underlying Agreement.

As such, we find unavailing Husband's reliance on **Ambrose v. Citizens Nat'l Bank of Evans City**, 5 A.3d 413, 423 (Pa. Super. 2010), which involved the single issue of attorney fees incurred to litigate an appeal that affirmed the plaintiffs' judgment. While the **Ambrose** Court noted that plaintiffs had sought no fees for litigating attorney fees in an appeal where the fee award had been vacated, it also recognized the propriety of awarding fees incurred in successfully rebuffing their employer during post-judgment and remand proceedings. **Id.** at 423-424. **See also Richards v. Ameriprise Financial, Inc.**, 305 A.3d 1013 at \*\*7-8 (non-precedential decision) (Pa. Super. filed September 26, 2023) (analogizing **Ambrose** and discerning, under similar facts, no abuse of trial court discretion in awarding fees where it found "that [the plaintiff's] interests were still being furthered.").

Wife furthered her interests when she defended against Husband's first appeal contesting the trial court's order denying his cohabitation claim and, in so doing, preserved the Agreement, which, among other things, required Husband to pay her reasonable attorney fees in the underlying action. Indeed, Husband did not successfully oppose the application of the Agreement against him, and he was not "vindicated" by this Court's remand and order that the trial court first must consider the reasonableness of Wife's claimed attorney fees. The favorable decision he received in his initial appeal simply acknowledged that the Hearing Officer's and trial court's review of Wife's claim

of attorney fees erroneously omitted an inquiry into whether the dollar amount of the claimed fees was reasonable. Therefore, Wife was not a non-prevailing party on her claim for attorney fees, and we reject Husband's argument to the contrary.

As for the $16,805.00 in non-appeal attorney fees incurred by Wife in enforcing the parties' Agreement through petition and litigation, Husband maintains that several matters billed by Wife's attorney were outside the scope of necessary enforcement of the Agreement. *See* Brief of Appellant at 83-91. The trial court, however, explains in the opinion accompanying its post-remand reasonableness inquiry of Wife's attorney fee award the process by which it came to determine that the above amount represents a reasonable fee:

> On cross examination, [counsel for Wife] was asked about specific billing entries and conceded where an entry could overlap between support, equitable distribution and enforcement, all three being actively litigated. [Counsel for Wife] was questioned about charging travel time to his client to attend court and depositions. Lastly, [Counsel for Wife] was questioned about Wife's lack of candor in her responses to requested discovery and the additional fees her lack of candor cost her.

> After the hearing, the [trial court] reviewed the bills and reached out to counsel for a brief on-the-record conversation as to the final amount of requested legal fees. The legal fee request made was not consistent with what the [trial court], in a preliminary review of the actual invoices, had determined, nor did it consider the charges which should not have been included.

> . . .

> In a careful review of Exhibit W-2, most importantly, the actual bills attached and not the summary, the [trial court] finds

- 28 -

[Counsel for Wife] spent approximately twenty seven (27) hours of time on this matter, after adjustments for the matters billed that were not related to the enforcement or through the discounting of certain charges as they related to more than one use (*i.e.*, support, equitable distribution, and enforcement). As the [trial court] stated in the original proceeding and repeated on February 26, 2024, in open court, Husband exercised self-help requiring Wife to take the first step and initiate the action incurring additional fees as opposed to Husband filing, as he should have, and incurring the upfront costs and allowing Wife to react rather than prosecute. It is his breach of the Agreement that gives the [trial court] the ability to award Wife counsel fees.

. . .

[Counsel for Wife] has a statewide reputation as an expert in the field of family law and has taught numerous courses to other professionals, including attorneys. The [trial court] finds his hourly rate to be appropriate considering his standing, skill, and reputation in the family law community.

[Counsel for Wife] was successful in the prosecution of the underlying claim of enforcement of the Agreement and due to Husband's violation of the Agreement, was forced to proactively seek his client's entitlement rather than respond to the filing Husband should have filed, a Petition to Terminate Alimony. The issue was not a difficult one from Wife's standpoint, she sought to enforce a properly bargained Agreement. It was a difficult one for Husband to defend as he had to file extensive discovery to prove what he believed, which it turned out was not accurate, a conclusion affirmed by the Superior Court.

. . .

Wife is requesting fees in the amount of . . . $16,805.00. . . .

It is the [trial court's] obligation to review all the evidence presented and in doing so, a thorough and detailed review of the actual legal fees incurred as attached to the summary marked as Exhibit W-2 was completed. Even when considering the items [Counsel for Wife] testified as not being wholly attributable to this matter or not at all attributable, the [trial court] finds the request for legal fees to be reasonable, at least in the amount requested with consideration, the discovery issues created by Wife, she is

- 29 -

awarded the sum of $16,805.00 for the prosecution of the legal fees in this matter.

Trial Court Opinion and Order, 5/17/2024, at 3, 4.

In the trial court's subsequent Pa.R.A.P. 1925(a) opinion, it underscores

its view on the reasonableness of this fee award:

> "[T]he determination of a reasonable fee is an inherently case-specific endeavor." [**Richards v. Ameriprise Financial, Inc.**, 217 A.3d 854, 870 (Pa. Super. 2019). Hereinafter, "**Richards II**."]. The **Richards II** court further stated, "We will not find an abuse of discretion in the award of counsel fees "merely because [we] might have reached a different conclusion." [**Id.** citations omitted].

> That is exactly what the trial court did when determining the appropriateness of the award of legal fees. In determining the amount awarded to [Wife], the [trial court][ went through the actual billing statements. . . . Much of the work performed by [Counsel for Wife] was due to [Husband's] lack of evidence to support his allegation of cohabitation and instead embarking on extensive discovery in order to attempt to create the case he believed he had. None of that excuses [Wife's] own bad behavior in responding to discovery, but Appellee's actions as well as the other pending litigation was considered by the [trial court] when reviewing the bills.

> The court is not bound by the amount requested by [Wife], or any litigant, in the assessment of reasonable legal fees. As stated, the determination of legal fees is a specific endeavor, one not limited to the amount requested. It appears part of [Husband's] complaints are based on his failure to understand that [Wife] was due more than the amount requested by her counsel, and when the more detailed analysis was undertaken, she was awarded what was reasonable and appropriate under the law based on the testimony of appropriate adjustments and legally admissible documentation.[] Simply stated, adjustments were made to the overall bill based on [Counsel for Wife's] testimony and [the trial court's] analysis of the fee statement.

Trial Court Pa.R.A.P. 1925(a) Opinion, 8/12/2024, at 9-10.

- 30 -

Manifest in both the record and the opinion is an appropriate review of the entire relevant litigation it oversaw and a proper exercise of discretion in arriving at a fair and just award. Accordingly, we decline to disturb the trial court's comprehensive post-remand calculation of a reasonable attorney fee applicable to Wife's enforcement of the Agreement.

In Husband's fourth issue,[11] he claims the trial court erred as a matter of law and abused its discretion by failing to apply the coverture fraction or credit him for what he describes as his post-separation efforts over many years to the assets: (1) Tranches one and two of the 2015 LTI Grant Stock Options; (2) Tranche three of the 2015 LTI Grant Stock Options; (3) 6036 net shares of Trinseo stock from the 2015 LTI RSUs; (4) 2013 LTI grant; (5) 2014 LTQ grant; and, (6) 2015 retention payment. The trial court erred in its determination that he failed to meet his burden to prove such assets were earned post-separation, he maintains, when his evidence showed that the LTI awards and RSUs tie him, as an executive, to the future performance of the company and required his continued employment to satisfy the vesting requirements.

Husband testified at length about the terms of these documents, and he argues his testimony went unrebutted by Wife. He points to the 2014 Omnibus Incentive Plan for Trinseo, the accompanying prospectus and acceptance agreement, and the share ownership guidelines, as establishing

_____

[11] Brief of Appellant addresses Issue 4 at Argument I on pp.66-74.

the rules to which he had to agree to receive the 2015 LTI grant. The 10,000 LTI RSUs from the 2015 grant had a three-year vesting schedule, and if he left the company before the vesting date, he would receive no funds from it. Similarly, the 2015 LTI stock options vested *pro rata*, in three equal increments annually, which did not provide him with funds *per se* but gave him, instead, a contractual right to purchase shares at a given strike price provided he did so consistent with SEC laws. Husband contends that all the LTIs were "meant to be a retention tool . . . designed to incentivize employees to stay." Brief of Appellant, at 70.

Central to Husband's position is the argument that he "was not asking the Court to find a specific portion of the assets are marital." He states that "these assets are all marital, but [he] was entitled to a coverture fracture, or a significant credit based upon his efforts post-separation to the preservation and subsequent appreciation of these assets." Brief of Appellant, at 73.

Wife responds that the trial court did not err in denying Husband's exception to this determination where Husband failed to prove that any part of these assets were earned post-separation and, thus, non-marital. As correctly observed by the trial court, Wife argues, there is no precedent in the law for using the coverture fraction to divide stock options, RSUs, or bonuses. Instead, it is a tool used to determine what share of a pension was earned outside of the marriage and to separate such share from marital property. **See** Brief for Wife, at 23-24.

The trial court denied Husband's exception to the Hearing Officer's Recommendation. It opined that since all the assets are marital, they were properly included in the equitable distribution calculations, which apportioned the assets as follows:

The assets being held in the Constructive Trust are a combination of the first and second February 2015 long term incentive (LTI) stock grants, $503,680, the third 2015 LTI stock grant, $22,634, long-term incentive payments, 2013-$78,200 and 2014-$95,00, 2015 retention payment, $42,250, dividend payments, $24,092, and the Pitney Bowes Non-Qualified Restoration Plan, $201,000, . . . plus an additional 6,036 shares of Trinseo stock.

The non-retirement assets total $1,166,856[] and the retirement assets total $402,360. Due to the nature of the assets, the Hearing Officer divided the assets in the blocks, i.e., she divided each individual tranche of stock options and payments.

Husband received 60% of all the 2015 stock grants, of the 6,036 shares of Trinseo stock, of the dividends generated from the ownership of those shares of stock, and 40% of the 2015 retention and the 2013 LTI incentive payment.

Wife received 60% of the 2013 LTI payment and of the 2015 retention payment and 40% of all the 2015 stock grants, of the 6,036 shares of Trinseo stock, of the dividends generated from the ownership of those shares of stock.

The parties shared equally the 2014 long-term incentive payment.

The Hearing Officer awarded Wife the entirety of the Pitney Bowes Non-Qualified Restoration Plan, $201,000 and the entire marital portion of the Pitney Bowes Defined Benefit Plan, estimated to be $402,360 gross, after applying a coverture fraction.

The end result is that Husband received $550,149[] from the Constructive Trust, 2,417 shares of Trinseo stock and the entirety of the Pitney Bowes Defined Benefit Plan, valued at approximately $402,360.

Trial Court Opinion, 5/17/24, at 3-4.

Husband excepted to the Hearing Officer's determination as to when he "earned" the LTI grants/options and the RSUs. In his appellate brief, he argues this conclusion "ignored the fact that most of the value of the assets was earned post-separation." Brief of Appellant, at 74. The hearing officer, however, found that Husband failed to prove Trinseo made these awards to secure his future performance, as would be required of him to establish that such assets could not be earned until his right to exercise the option had matured.

Specifically, in denying Husband's exception to the Hearing Officer's findings of fact and recommendations on this issue, the trial court took guidance from *MacAleer v. MacAleer*, 725 A.2d 1999 (Pa. Super 1999), which held that an employer's award of stock options to an employee made prior to the employee's marital separation is deemed earned at the time of the award, and thus constitutes marital property, even if the right to exercise the options does not vest until some later time that happens to occur after the marital separation. *MacAleer* clarified that "[c]ontinued employment is merely a contingency to be met before the right to exercise any such option matures." *Id.* at 833.

Husband's request for coverture fraction approach to his stock options appears to seize upon language in *MacAleer* finding "stock options to be comparable to pension benefits in that they are also employee benefits that "are received in lieu of higher compensation." *Id.* at 833 (citation omitted).

By that analogy, he argues stock options earned after the date of separation are not marital property and are subject to a coverture fraction. This merely begs the question, however, as to when the stock options were earned.

This Court confronted the same question in **MacAleer**, where the husband argued that "because his right to exercise the options required his continued service to [his employer] for periods of two to six years following the dates of the grants, the stock options constituted incentives for future services." **Id.** at 833. We rejected this argument, reasoning:

> This is insufficient to overcome the presumption that the stock options at issue constitute marital property. Husband is required to demonstrate that he *earned* the options after separation. Continued employment is merely a contingency to be met before the right to exercise any such option matures. Accordingly, under the facts and circumstances of this case, we find the stock options at issue to constitute marital property. Consequently, we conclude that the trial court did not abuse its discretion by including, as marital property subject to equitable distribution, the 39,000 shares of stock purchased by Husband subsequent to the parties' separation.
>
> . . .
>
> We are persuaded by the majority [of jurisdictions'] approach that apportions stock options not yet matured between marital and non-marital property based upon when the options are earned. This approach is analogous to the manner in which we apportion pension benefits between the parties. More importantly, however, by allowing for apportionment of the options between marital and non-marital property based upon when the options are earned, the majority approach advances the intent of our legislature that in determining whether an asset constitutes marital property, we do so with the intent to "[e]ffectuate economic justice between the parties . . . . and insure a fair and just determination and settlement of their property rights." **See** 23 Pa.C.S. § 3102(a)(6).
>
> . . .

Because we have concluded that the trial court did not err in determining that all stock options granted to Husband during the marriage constituted marital property, the use of a coverture fraction was unnecessary to apportion those shares purchased subsequent to the parties' separation.

*Id.* at 833.

Here, as part of Husband's argument that he had not yet earned the options pre-separation, he states that if he were to leave the company voluntarily or be terminated for cause prior to the vesting date, then he would not receive any funds and that "the record is clear that he had to continue to be employed in order for him to receive the RSUs and stock options." **See** Brief for Appellant at 70, 71.[12] **MacAleer**, however, clarified that the grant of an option imposing an employment contingency period before vestment is deemed earned at the time of the grant, as it is not the equivalent of an option grant intended to secure future performance meeting specified standards. **Id.** at 833.

Nowhere does Husband specify how the option grants were awarded to secure his future performance. His attempt to infer such a purpose from the implicit condition that the continued success and existence of the company depended upon his future performance is unavailing as a matter of logic, as any contingency period necessarily incentivizes employee service necessary

---

[12] We note that Husband's own testimony conceded, however, that the "long-term incentive is meant to be a retention, too." **See** trial court Opinion, 5/17/24, at 16.

to ensure the company's continued existence up to the time the options may be exercised.

On the pivotal question before us, **MacAleer** instructs, "the trial court is to apportion stock options between marital and non-marital property according to when they are earned." **Id.** at 833. Employing a pension-like coverture fraction, which is used to separate a pension share earned outside the marriage from pension shares earned during the marriage is unsuited to the situation in the case *sub judice*. Because Husband's stock options imposed a standard contingency period before vestment, they were earned, and thus became marital property, at the time they were granted. Accordingly, we agree with the trial court's determination that the stock options in question are all marital property when viewed in accordance with **MacAleer**. We find no merit to Husband's claim.

The last of Husband's enumerated issues that we address is his fifth,[13] which asserts the trial court erred as a matter of law and abused its discretion by granting a Constructive Trust for the Pitney Bowes Defined Pension Plan. Husband predicates this issue on the following statement:

> As argued in Section 7(A) of this Brief, it was Wife's burden to prove that Husband's [sic] made a fraudulent misrepresentation." Wife failed to do so and therefore the Trial Court erred by granting the request to Amend the Constructive Trust and include the Pitney Bowes Defined Pension Plan (by finding that Husband made a fraudulent misrepresentation) because Wife was aware of this asset."

_____

[13] The Brief of Appellant addresses this issue at Argument J, pp. 74-76.

Brief of Appellant, at 74.

As discussed *supra*, we have addressed the issue of Husband's alleged fraudulent misrepresentation and Wife's reliance thereon and decided it against Husband. By Husband's own argument, therefore, this issue is without merit, as we have rejected its predicate.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/2/2025